WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Lee Schafer,<br><br>Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Respondents. | No. CV-17-0135-TUC-LCK<br><br>**ORDER** |

Petitioner Michael Schafer has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before the Court are the Petition (Docs. 1, 24), Respondents' Answer (Docs. 17-21), and Petitioner's Reply (Doc. 22). The parties have consented to Magistrate Judge jurisdiction. (Doc. 9.) The Court finds the Petition should be dismissed.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Schafer was convicted in the Pima County Superior Court on one count of conspiracy to commit burglary, aggravated robbery, and aggravated assault; one count of burglary; one count of aggravated robbery; and one count of aggravated assault. (Doc. 18, Ex. B.) He was sentenced to concurrent prison terms, the longest of which is 11.25 years. (*Id.*)

The Arizona Court of Appeals summarized the facts in support of Shafer's convictions:

> In June 2013, after dating for eight years, Schafer and J.W. ended their relationship. J.W. tried to arrange a meeting to give Schafer his belongings, including a basket of unwashed clothes and a box of NASCAR cards, which he had left at her house. Instead, Schafer approached Shannon Adkins and

asked her to "go collect [his belongings]." He also said he wanted J.W.'s cell phone because "she kept calling him and wouldn't stop" and he wanted Adkins to "whip [J.W.'s] ass." Schafer offered Adkins $150: $50 for his belongings, $50 for the cell phone, and $50 for the "ass whipping." After Schafer showed Adkins a photo of J.W., Adkins recognized J.W. from when they used to live in the same housing complex. Adkins agreed to Schafer's plan and solicited the assistance of Yvonne Lizama.

¶ 3 At approximately 1:00 p.m. on June 15, Adkins and Lizama knocked on J.W.'s door. Recognizing Adkins, J.W. opened the door, and Adkins asked, "Hey, do you want to get high?" After J.W. refused, Adkins punched her in the eye and pushed her into the house. The two struggled, and Adkins pinned J.W. to the ground and continued to hit her in the head. Meanwhile, Lizama searched for Schafer's belongings. Lizama asked J.W. for "a wicker basket and dirty clothes," and, after realizing that she wanted Schafer's belongings, J.W. told her where to find the clothes and NASCAR cards. Lizama grabbed the items, as well as J.W.'s purse, which contained her cell phone, car keys, credit cards, and blank checks.

¶ 4 Adkins and Lizama later met up with Schafer and gave him the clothes, NASCAR cards, and cell phone in exchange for $150, which the two women divided equally. Adkins kept the other items from J.W.'s purse, and, later that day, she used J.W.'s credit cards and forged checks to make purchases. A few days later, an acquaintance of Adkins used J.W.'s car keys to steal her car from her house.

¶ 5 J.W. reported the incident to the Tucson Police Department. During a subsequent interview with investigating officers, Schafer admitted saying "out loud" to a group of people that he would "pay somebody to go down there and ... take care of this." He said J.W. "had [him] so upset that [he] just ... wan[ted to] be done with her." Schafer also acknowledged paying Adkins and Lizama $150 when they gave him his clothes and NASCAR cards.

(*Id.*, Ex. H at 2-3.)

Schafer appealed, and the Arizona Court of Appeals affirmed his convictions and sentences. (*Id.*, Exs. E, H.) Schafer filed a Notice of Post-conviction Relief (PCR). (*Id.*, Ex. J.) Appointed counsel filed a PCR Petition alleging ineffective assistance of counsel (IAC). (*Id.*, Ex. J.) The PCR court denied the IAC claims on the merits, finding that counsel's performance was not deficient. Schafer's Petition for Review restated the IAC claims verbatim from the PCR Petition and argued review should be granted because the PCR court erred in failing to hold an evidentiary hearing. (*Id.*, Ex. N.)

## **DISCUSSION**

Schafer raises one claim in his Petition, that his Sixth Amendment rights were violated by counsel's ineffectiveness in failing to call witness Ann Davis to testify.

Respondents contend Schafer failed to fairly present this claim in the Petition for Review and it is, therefore, procedurally defaulted. The Court finds this claim is most expeditiously resolved on the merits. *See* 28 U.S.C. § 2254(b)(2).

IAC claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficiency prejudiced the defense. *Id.* at 687-88. The inquiry under *Strickland* is highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, to satisfy *Strickland's* first prong, deficient performance, a defendant must overcome "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

A petitioner must affirmatively prove prejudice. *Id.* at 693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Schafer alleges counsel was ineffective for failing to call Ann Davis to testify because she could have contradicted testimony by co-conspirator Adkins. (Doc. 1 & Ex. A.) Schafer attached an affidavit from Davis to his PCR Petition. (Doc. 18, Ex. K.) Davis averred that she was friends with Adkins and heard someone ask her to get Schafer's belongings from J.W.; she never heard a request for J.W.'s cell phone or for Adkins to hurt J.W. (Davis Aff. ¶¶ 2, 3.) Later, Adkins told Davis that, when she went to J.W.'s to get Schafer's belongings, J.W. hit her and Adkins beat her up in self-defense. (*Id.* ¶¶ 5, 6.) Davis knew Adkins to have been in many altercations with other people. (*Id.* ¶ 7.) Davis provided defense counsel with letters from Adkins indicating an intent to get revenge on Schafer. (*Id.* ¶ 8.) Finally, Davis stated that she was present at the courthouse to testify, had not ingested any illegal substances that day, and was not acting unusually. (*Id.* ¶¶ 9, 10.)

Schafer's trial counsel, Natalie Prince, also provided an affidavit during the PCR proceedings. (Doc. 18, Ex. L at Ex. 1.) She averred that she met with Davis three times in person, talked to her on the phone multiple times, and Davis had been present during the trial. On each of those occasions, Prince had concluded she was clean, sober, and a responsible person. On the day Davis was supposed to testify, Prince stated that Davis arrived with Schafer and her hair was in a rat's nest, her pants were torn, her speech was slurred, and she was acting strange and exhibiting some ticks. Prince stated that Schafer was shaking, extremely pale, sweating profusely, and his speech was slow and shaky. Counsel concluded that Shafer and Davis had spent time drinking or using drugs. (Prince Aff. at 1.) Because she determined that Davis looked like a "homeless drug addict," she told Davis and Shafer that she would not call her to testify. (*Id.* at 1-2.) The purpose of Davis's testimony was to present Adkins's reputation; Prince concluded that testimony from Davis would be damaging to the defense and could prejudice the jury against Schafer. (*Id.* at 1.) After the fact, based on her experience, Prince believed it was the right decision not to call Davis as a witness. (*Id.* at 2.)

The PCR court made the following factual findings: trial counsel's decision not to call Davis was a tactical one based on her experience that the testimony would hurt Schafer's interests; Adkins's bias was "well established" at trial through her own testimony that she disliked him because he "snitched on her" and evidence that she received a reduced sentence for assisting the prosecution; and additional evidence of bias was unlikely to discredit Adkins. Under the AEDPA, this Court must presume correct any fact finding by the state court, unless the petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Schafer has not rebutted any of these findings and the Court accepts them as true.

After review of the evidence submitted during the PCR proceeding, the trial testimony of Adkins, and the PCR court findings, the Court concludes that counsel's strategic decision not to call Davis as a witness was not objectively unreasonable. Counsel

believed that Davis's testimony would be helpful, and she had spoken to her many times with the intent of using her as a trial witness. However, based on Davis's appearance and demeanor, it was reasonable for Prince to determine that Davis could hurt Schafer's defense.

Additionally, counsel had been able to establish the crux of Schafer's defense through cross-examination of Adkins. Prince cross-examined Adkins using the letters she wrote to Davis, which made evident that she was biased against Schafer and wanted to get back at him for telling the cops of her involvement in the crime. (RT 11/5/14 at 39-40, 44-45, 90-91, 93-95.)[1] The letters also revealed Adkins numerous threats to "get" other people with whom she was angry, which demonstrated her aggressive nature. (*Id.* at 79, 87, 88-90, 92-93, 94, 96.) Counsel's questioning of Adkins raised doubts about whether Schafer asked her to beat up the victim or if Adkins did it because the victim got physical with her. (*Id.* at 17, 57-58, 60-62, 69-70.) Schafer has not demonstrated that he suffered actual prejudice and that there is a reasonable likelihood he would not have been convicted if Davis had testified that day.

The Court finds Claim 1 is without merit.[2]

---

[1] RT refers to the Reporter's Transcripts of Schafer's trial, which are attached to Respondent's Answer. (Doc. 21, Ex. 1-4.)

[2] In the Petition, Schafer alleges IAC solely based on counsel's failure to call Davis as a witness. Because it is the only claim clearly stated on the face of the Petition, it is the only one the Court addresses in full. However, under the fact section, Schafer incorporates the legal argument from his Petition for Review to the Arizona Supreme Court as the factual basis to support the claim. (Doc. 1 at 17-19.) That petition contains two other claims: counsel was ineffective for failing to question Schafer's brother Jeremy about an exculpatory conversation he had with Adkins; and counsel was ineffective for failing to request certain jury instructions. For the sake of thoroughness, the Court touches on these claims below.

The IAC claim based on jury instructions was not included in Schafer's Petition for Review to the Arizona Court of Appeals. (Doc. 18, Ex. N.) Therefore, it was never fairly presented to the state appellate court. If Schafer were to return to state court now to litigate this claim it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Thus, this claim is technically exhausted but procedurally defaulted.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to the applicant. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). The Court finds that reasonable jurists would not find this Court's rulings debatable. Therefore, a COA will not issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and close this case.

---

The IAC claim based on counsel's examination of Jeremy is supported by affidavits from Jeremy and Schafer attached to Schafer's PCR Petition (Doc. 18, Ex. K). They avow that, during transport to court, Adkins stated that Schafer had not paid her to assault the victim and that she wanted revenge against Schafer. (*Id.*) This claim is without merit. Counsel averred in her affidavit filed during Schafer's PCR proceeding that neither Schafer nor Jeremy reported an exculpatory conversation with Adkins; if they had, she would have used it to examine Jeremy and Adkins. (Doc. 18, Ex. L, Prince Aff. at 2.) As noted by counsel, Adkins and Jeremy testified on separate days; therefore, Schafer's allegation that the conversation took place during in-custody transport was not likely true. (*Id.*; RT 11/5/14; RT 11/6/14.) Further, because Jeremy was in custody, he had no contact with his brother on the day of his testimony when he could have reported a conversation. (Prince Aff. at 2.) Even if this claim had been properly presented in this Court and exhausted in state court, Schafer has not demonstrated that counsel's performance was deficient. Additionally, this evidence would have been mostly cumulative of information already brought out on cross-examination of Adkins (as discussed more thoroughly above).

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability.

Dated this 17th day of December, 2018.

*[signature]*
Honorable Lynnette C. Kimmins
United States Magistrate Judge